UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| VIVIAN FARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00051-SEP |
| | ) | |
| BILL ALLEN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff Vivian Farris's motion for leave to proceed *in forma pauperis*, Doc. [2], and Defendants' Motion to Dismiss, Doc. [7].  Having reviewed the motion and supporting financial information, the Court will grant Plaintiff leave to proceed *in forma pauperis*.  In light of Defendants' Motion to Dismiss and the Court's own review under 28 U.S.C. § 1915(e)(2)(B), however, the action will be dismissed.

### STANDARDS OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  "Liberal construction" means that "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  Even self-represented plaintiffs are required to allege "facts, which if true, state a claim as a matter of law."  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (declining to supply facts or construct a legal theory for a self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  To survive a motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (quoting *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017)).  But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265 (1986), and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

### THE COMPLAINT

Vivian Farris typed this action in the same style as the Court's civil complaint form.  She names the following entities and individuals as defendants:  Bill Allen (Manager/Maintenance, Heritage Place Apartments); Heritage Place Apartments; Sandi Heidelberg, Regional Manager of Wilhoit Properties, Inc.; John Does, Owners/Officers/Managers of Wilhoit Properties, Inc., a subsidiary of Zimmerman Properties in Springfield, Missouri; and John Does, Owners/Officers/Managers of Zimmerman Properties, LLC.  Doc. [1] at 1-2.  Plaintiff states that she lives in Bowling Green, Missouri, in Pike County.  She claims that she has been discriminated against on the basis of her race, age, and gender in violation of Title VII of the Civil Rights Act of 1996, the Fair Housing and Equal Opportunity Act, the Missouri Human Rights Act, the Americans with Disabilities Act, and the Violence Against Women Act.  *Id.* at 2.

2

Plaintiff also states that she was retaliated against because the rules of the lease agreement's "rules of occupancy" were applied differently to her as compared to the White tenants and had a "disparate impact on [her]." *Id.*

Plaintiff, a Black female, alleges that few months after the death of her husband in 2018, she moved into Heritage Place Apartments. *Id.* At that time, Heritage Place was under a different manager who was a female, and Plaintiff was one of the first tenants to occupy one of the 20 duplex apartments within the Senior Housing Units. *Id.* She asserts that the manager "respected tenants['] rights to privacy[,] and requests for maintenance were met in timely order." *Id.* Plaintiff alleges that things changed when Defendant Bill Allen was hired as the new manager/maintenance employee. Plaintiff does not indicate when Bill Allen took over, but from the facts alleged, it appears it was in late 2018 or early 2019. Plaintiff asserts that, as manager, Mr. Allen filled the remaining housing units at Heritage Place Apartments rather quickly "with white tenants." *Id.* Plaintiff does not state Mr. Allen's race, but she details a number of allegations against him:

1. Mr. Allen began dropping by Plaintiff's apartment during the week, especially when she had company. He was not at Plaintiff's home to do maintenance, so Plaintiff requested Mr. Allen call or send an email the day before if he needed to fix something that was not an emergency. That prompted Mr. Allen to drop by without notice more frequently. *Id.* at 2-3.

2. During 2019, Plaintiff put in a request for a repair of cracks in the joining of the ceiling and wall. A few weeks later, Mr. Allen and another man filled the cracks with some sort of white filler. When Plaintiff told Mr. Allen where other cracks and gaps were, "he spurted out that [Plaintiff] remind[s] him of why he wasn't married because he didn't like women telling him what to do." He still has not returned to Plaintiff's home to paint over the repair. *Id.* at 3.

3. In August of 2020, Mr. Allen told Plaintiff to tell him directly and not contact the Springfield, Missouri, office if she needed any repairs to her apartment. This statement came after Plaintiff requested her water leak be fixed. Plaintiff took Mr. Allen's statement to mean that Mr. Allen "could delay or come by at any[]time without notice or do nothing" because the home office did not know about the repair requests. *Id.*

4. During Mr. Allen's first winter as manager, "the snowplow tore up a couple sections of the concrete curb in front of [Plaintiff's] building." Despite several requests, it has not been repaired. *Id.*

5. In 2019, Plaintiff was walking up the sidewalk when Mr. Allen remarked that Plaintiff looked like she was not wearing any clothes. Plaintiff states that she had on a pair of cotton pants with a pajama top. *Id.*

3

6. In July of 2020, Mr. Allen informed Plaintiff that Plaintiff's daughter and her family were not allowed to stay in Plaintiff's apartment for more than two days. Plaintiff states that her daughter was homeless because she lost her job, and Mr. Allen had allowed Plaintiff's granddaughter to stay with her for six months the prior summer. Plaintiff asserts that she received written notification that her daughter's family had to move out, and when she contacted Sandi Heidelberg, Regional Manager, she was informed that she needed to comply with the directive. Plaintiff alleges this was racist because there were only two other Black families living in the units at Heritage Place Apartments, and Defendants' actions were done "to deprive [Plaintiff] of housing and for the purpose of filling the apartments with White tenants." *Id.* at 3-5.

7. In August of 2020, three White police officers from Bowling Green Police Department were sent to Plaintiff's apartment after 11:00 pm because a neighbor reported a foul odor coming from Plaintiff's apartment. The officers wanted to enter to check for a gas leak, but Plaintiff informed them that none of the Heritage Place apartments had gas hook ups. She claims the officers "blocked [her] inside [the] apartment by way of standing in triangular formation on the small, concrete porch, very close to the open front door," and she feels "they were sent to intimidate, harass and frighten" her. Plaintiff further alleges she has seen the officers talk to Mr. Allen several times. *Id.* at 5.

Plaintiff asserts that the above allegations show that "Defendants have created an environment that is not inclusive, intimidating, dangerous, [and] ignores her right to privacy." *Id.* at 6. She also states she has been the subject of discrimination, harassment, and retaliation. *Id.* Plaintiff seeks compensatory and punitive damages.

## DISCUSSION

Plaintiff claims that she has been discriminated against on the basis of her race, age, and gender in violation of Title VII of the Civil Rights Act of 1996, the Fair Housing and Equal Opportunity Act, the Missouri Human Rights Act, the Americans with Disabilities Act, and the Violence Against Women Act. She states that she was retaliated against because the rules of the lease agreement for occupancy were applied differently to her than they were to White tenants. Plaintiff further states that the occupancy rules had a "disparate impact" on her while living at Heritage Place Apartments.

Defendants Bill Allen and Sandra Heidelberg filed a motion to dismiss in this action on October 28, 2020. They seek dismissal of Plaintiff's Complaint on several bases. First, they assert that Plaintiff has not complied with Federal Rules of Civil Procedure 8 and 10. Instead of listing her claim succinctly, they contend, Plaintiff has alleged a "laundry list" of claims against various defendants, making it almost impossible to respond to her allegations. Doc. [9] at 3.

Moreover, Plaintiff has not met the pleading standard enunciated in *Ashcroft*, 556 U.S. at 678, because her allegations are merely conclusory and do not state a factual basis for relief. *Id.* at 5. In addition, Defendants contend that Plaintiff fails to state a claim under the Americans with Disabilities Act, Title VII, the Violence Against Women Act, and the Fair Housing Act.

### 1. Violence Against Women Reauthorization Act

President Barack Obama signed the Violence Against Women Reauthorization Act of 2013, but as a result of the United States federal government shutdown of 2018–2019, the Act expired on December 21, 2018. It was temporarily reauthorized by a short-term spending bill on January 25, 2019, but again expired again on February 15, 2019. The Act has not been reauthorized as of this date. Thus, Plaintiff is unable to bring a claim for gender-motivated violence under the Violence Against Women Act.

### 2. Missouri Human Rights Act

In the "Statement of Case," Plaintiff states that she was discriminated against on the basis of her race, age and gender in violation of the Missouri Human Rights Act (MHRA). Doc. [1] at 1. This is Plaintiff's only reference in her Complaint to a violation of the MHRA, which prohibits discrimination in any aspect of housing because of an individual's race, color, national origin, ancestry, religion, sex, familial status, pregnancy status, and disability. Plaintiff has not alleged any facts supporting a claim that she has been impeded from housing on the basis of her race or gender. *See* Mo. Rev. Stat. §§ 213.010–.137. Additionally, the Complaint does not indicate that Plaintiff exhausted her administrative remedies with respect to her MHRA claims, which is required prior to initiating a civil action under the MHRA. *See Tart v. Hill Behan Lumber Co.,* 31 F.3d 668, 671-672 (8th Cir. 1994) ("Before initiating a civil action under the MHRA, a claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the MCHR or obtaining a right-to-sue letter."). Thus, Plaintiff's MHRA claims must be dismissed.

### 3. Claims Brought Pursuant to Title VII of the Civil Rights Act of 1996

Title VII provides that "[i]t shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire . . . any individual . . . because of such individual's race . . . or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a).

5

Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, which is more commonly known as the Fair Housing Act, prohibits discrimination in the housing sector.  Because Plaintiff is not bringing an action for employment discrimination, she cannot bring a claim under Title VII.  The Court evaluates Plaintiff's claims brought pursuant to the Fair Housing Act below.

### 4. Claims Brought Pursuant to the Fair Housing Act

"The Fair Housing Act (FHA) prohibits property owners and municipalities from blocking or impeding the provision of housing on the basis of race, color, religion, sex, familial status, or national origin." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (citing 42 U.S.C. § 3604(a)–(b)).  Like Title VII, Title VIII permits any person "aggrieved" by a violation of the statute to file a charge and bring a civil action.  42 U.S.C. §§ 3610(a)(1)(A)(i), 3602(i).  The party asserting a housing discrimination claim under the FHA has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence.  *See Radecki v. Joura*, 114 F.3d 115, 116 (8th Cir. 1997).  Plaintiff does not allege that she was blocked or impeded from housing on the basis of her race.  *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than 'labels and conclusions or a formulaic recitation of the elements of a cause of action' to state a plausible claim for relief" (quoting *Iqbal*, 556 U.S. at 678)).  In fact, Plaintiff states that she was one of the first tenants to occupy one of the 20 apartments within the Senior Housing Units.  Doc. [1] at 2.  None of her complaints against Mr. Allen states a claim for housing discrimination under the FHA.

### 5. Claims Brought Pursuant to the Americans with Disabilities Act and the Rehabilitation Act

Plaintiff claims that Defendants violated the Americans with Disabilities Act (ADA), which states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Power v. Univ. of N.D. Sch. of Law*, 954 F.3d 1047, 1052 (8th Cir. 2020) (quoting 42 U.S.C. § 12132); *see I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, 863 F.3d 966, 972 (8th Cir. 2017) ("Title II of the ADA prohibits public entities from discriminating based on disability in services, programs, or activities.").  But Plaintiff's Complaint does not even allege that she has a disability, never mind that she has been discriminated against as a result of it.

6

Additionally, there is no indication that Defendants are "public entities." Under the statute, "public entity" is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation . . . ." 42 U.S.C. § 12131. To state a prima facie ADA claim, a plaintiff is required to demonstrate that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rogers*, 170 F.3d 850, 858 (8th Cir. 1999). Plaintiff's "Statement of Claim" fails to establish any of those three elements. Therefore, Plaintiff fails to state a claim under the ADA.

If Plaintiff's intent was to assert a disability discrimination claim under § 504 of the Rehabilitation Act of 1973 (RA) (which she did not expressly name) as well, the Complaint still fails to state a claim. Congress enacted the RA as a comprehensive federal program, similar to the Americans with Disabilities Act, meant "to ensure that individuals with disabilities would not 'be denied the benefits of [ ]or be subjected to discrimination under any program or activity' receiving federal funding." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013) (quoting 29 U.S.C. § 794(a)). The RA provides, in relevant part, that "no otherwise qualified individual with a disability in the United States shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006) (internal citation omitted).

To establish a prima facie case under the RA, a plaintiff is required to show that he (1) was a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on his disability. *Estate of Barnwell by and through Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018). "'A qualified individual with a disability' is broadly defined as any person who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (quoting 42 U.S.C. § 12131(2)). While it defines disability broadly, the RA "imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 n.5 (8th Cir. 1999).

7

Plaintiff has not alleged that she is a qualified individual with a disability, that she was housed in a property that received federal funds, or that she was discriminated against because of that disability.  Plaintiff also has not alleged that she believes Defendants acted with discriminatory intent as a result of her unnamed alleged disability.  Finally, Plaintiff has not alleged facts showing that she was "denied the benefits of a program or activity of a public entity that receives federal funds."  *See Estate of Barnwell*, 880 F.3d at 1004.  Therefore, Plaintiff has not stated a claim under the RA.

### 6.  Disparate Impact Claims

Finally, Plaintiff states that she was retaliated against because the rules of the lease agreement for occupancy were applied differently to her than they were to White tenants.  *Id.* at 2.  Plaintiff does not identify which rules she is referring to, except for the purported lease rule prohibiting non-tenants from residing in the apartment, but Plaintiff does not allege that Defendants allowed a White tenant to violate this rule while prohibiting her.

To state a prima facie case under a disparate impact theory, a plaintiff must show that "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices."  *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997).  This may be done through statistics or other proof demonstrating that a defendant's behavior had a "significantly adverse or disproportionate impact" on a protected group.  *Id.*  "Courts must [ ] examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important.  A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."  *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.,* 576 U.S. 519, 543 (2015).  Plaintiff's Complaint provides no allegations that Defendants' apparently neutral actions had a disproportionate effect on her or other Black individuals at Heritage Place Apartments.  Therefore, it fails to state a disparate impact claim.

### Conclusion

Because the Complaint fails to state any claim upon which relief can be granted, this action must be dismissed under 28 U.S.C. § 1915(e)(2)(B).  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Doc. [2]) is **GRANTED**.

8

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. [7]) is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. [3]) is **DENIED as moot**.

Dated this 9th day of June, 2021.

*Sarah E. Pitlyk*
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE